IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:20CR631 SEP |
| | ) |
| JASON DRAGGS, | ) |
| | ) |
| Defendant. | ) |

## **DEFENDANT'S SENTENCING MEMORANDUM**

COMES NOW Defendant, Jason Draggs, by and through his attorney and submits this memorandum in support of a downward variance from the advisory guideline range and for the Court's consideration.

Jason Draggs asks the Court to vary downward to a sentence of ten years, the mandatory minimum. The agreed-upon ten-year sentence reached by the parties is adequate punishment. The statutory mandatory minimum is evidence of the severity of the offense as viewed by Congress. It is a significant punishment for a first offender who was just 22 years old at the time of the offense.  The life sentence called for by the Guidelines is overly harsh and does not stem from reasoned decision-making by the Sentencing Commission.  A ten-year sentence achieves the purposes of § 3553(a) in that it punishes Jason for all of his unlawful conduct, while recognizing that his conduct was influenced, if not caused, by psychological problems, which had gone untreated, but which can be treated in the future.  It recognizes Jason's significant likelihood of rehabilitation, after appropriate punishment and treatment.  A lengthy term of supervised release also

provides protection for the public.  At least one court has recognized that an extended period of supervision after release from imprisonment, during which the defendant will be constantly monitored, may mitigate the need for extended imprisonment. See, e.g., *United States v. Shipley*, 560 F.Supp.2d 739, 744 (S.D. Iowa 2008).  Because of his potential participation in the BOP's Sex Offender Treatment Program, Jason will be *even less* of a threat to recidivate.  The ten-year term achieves the requirements of § 3553(a) and particularly Congress's admonition that the district court's "overarching" duty is to "'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing." *Pepper v. United States*, 131 S.Ct. 1229, 1242-43 (2011); *Kimbrough v. United States*, 552 U.S. 85, 111 (2007). In contrast, the Guideline sentence of life is shockingly high and much greater than necessary to serve the purposes of § 3553(a) simply by virtue of its duration. The sentence goes far beyond what would be necessary for "adequate deterrence." The difference between the 10-year mandatory minimum and a life sentence cannot be justified by specific deterrence.  The Seventh Circuit has held that a heavy sentence would not have a significant general deterrent effect on mentally ill defendants.  *United Sates v. Dyer*, 216 F.3d 568, 570 (7th Cir. 2000).   If the mental illness is treatable, as is the case with Jason, the goal of incapacitation may not be advanced by a heavy sentence.  *Id*.  Instead, appropriate mental health treatment would "incapacitate" Jason from committing further crimes.  *United States v. Miranda,* 505 F.3d 785 (7th Cir. 2007).   There is simply no basis to believe that a sentence exceeding 10 years is necessary to deter Jason (or anyone else) from committing this crime ever again. For all these reasons, nor can general deterrence or respect for the law justify a life sentence.

**INTRODUCTION**

The Supreme Court has made it clear that no presumption of reasonableness attaches at the district court level to the sentence the Guidelines suggest, *Gall v. United States*, 552 U.S. 38, 50 (2007)(explaining that a sentencing judge "may not presume that the Guidelines range is reasonable" but "must make an individualized assessment based on the facts presented."; *Rita v. United States*, 551 U.S. 338, 351 (2007) ("In determining the merits of [the parties'] arguments, the sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply."); *Nelson v. United States*, 555 U.S. 350 (2009)(per curiam).   The court must "frame[ ] its final determination in line with 18 U.S.C. § 3553(a)'s overarching instruction to 'impose a sentence sufficient, but not greater than necessary' to accomplish the sentencing goals advanced in § 3553(a)(2)." *Kimbrough*, at 111.

Notably, the Supreme Court has authorized downward variances in cases where the Sentencing Commission has not acted "in the ordinary case," such that the guideline range is not determined based on empirical data and national experience, guided by a professional staff with appropriate expertise.  *Kimbrough*, at 109 (holding that the Guideline ranges for crack cocaine offenses did not exemplify the Commission's exercise of its characteristic institutional role and the Commission chose instead to key the Guidelines to the mandatory minimum sentences Congress established).

Where a Guideline does not reflect the careful study of the Sentencing Commission, it is likely not a "reliable indicator of the Commission's perspective on a fair sentence."  *United States v. Shipley*, 560 F.Supp.2d 739, 744 (S.D. Iowa 2008).   In those

circumstances, the court may vary downward after making an individualized determination that the Guideline would yield an excessive sentence. *Spears v. United States*, 555 U.S. 261, 265 (2009). But the Court may go further, and categorically reject a Guideline on policy grounds - in other words, when the Court finds that the Guideline consistently yields sentences greater than necessary to achieve the purposes of § 3553(a) and not simply based on an individualized determination that they yield an excessive sentence in a particular case." *Spears,* at 264, 267 (discussing the holding in *Kimbrough* that "district courts are entitled to vary from the crack cocaine Guidelines in a mine-run case where there are no 'particular circumstances' that would otherwise justify a variance from the Guidelines' sentencing range")*; United States v. Vandebrake,* 679 F.3d 1030, 1039-40 (8th Cir. 2012) (affirming categorical rejection of Guideline for antitrust offenses).[1]

## I.  A Variance is Appropriate Given the History and Application of USSG 2G2.1 and 2G2.2 Guidelines, and Because it Results in a Sentence that is Greater Than Necessary to Meet the Purposes of Sentencing in 18 U.S.C. § 3553(a).

Courts have long recognized the crucial role that the Sentencing Commission's expertise plays in federal sentencing. Emphasizing the importance of the Commission's national experience and empirical studies, in 2006, the Seventh Circuit observed that "the sentencing guidelines represent 18 years of careful thought about appropriate sentences for federal criminal offenders." *United States v. Robinson*, 435 F.3d 699, 701 (7th Cir. 2006). The Guidelines have been utilized because the "Commission is uniquely qualified

---

[1]*see also United States v. Henderson,* 649 F.3d 955, 960 (9th Cir.2011); *United States v. Grober,* 624 F.3d 592, 599–600 (3d Cir.2010); *United States v. Corner,* 598 F.3d 411, 415 (7th Cir.2010) (en banc); *United States v. Cavera,* 550 F.3d 180, 191 (2d Cir.2008) (en banc); *United States v. Rodriguez,* 527 F.3d 221, 227 (1st Cir.2008).

to conduct studies using its vast database, obtain the views and comments of various segments of the federal criminal justice community, review the academic literature, and report back to Congress in a timely manner." *See* U.S. Sentencing Commission, Fifteen Years of Sentencing: An Assessment of How Well the Federal Criminal Justice System is Achieving the Goals of Sentencing Reform, at xvii (2004).[2]

However, the Commission has acknowledged that the goals of sentencing reform have not been fully achieved because "in some cases, the results of research and collaboration have been overridden or ignored . . . through enactment of mandatory minimums or specific directives to the Commission." *Id.* Courts generally assume that the guidelines are the product of careful study based on extensive empirical evidence. *See Rita v. United States*, 127 S.Ct. 2456, 2464-65 (2007).  However, as the Supreme Court has recognized, "not all of the Guidelines are tied to this empirical evidence." *Gall v. United States,* 128 S.Ct. 586, 594 n.2. (2007).  The guidelines U.S.S.G. §§ 2G2.1-.2G2.2 are precisely the type of flawed guidelines referenced in *Rita* and *Gall.*

Like the drug guidelines at issue in *Kimbrough*, §§ 2G2.1-.2G2.2 were not based on the Sentencing Commission's empirical study and national sentencing experience. Instead, "[m]uch like policymaking in the area of drug trafficking, Congress has used a mix of mandatory minimum penalty increases and directives to the Commission to change sentencing policy for sex offenses." *See Id.,* Sent. Comm'n, Fifteen Years of Guidelines Sentencing, at 72-73.

---

[2] available at http://www.ussc.gov/15_year/ 15_year_study_full.pdf).

For example, in the Protection of Children from Sexual Predators Act of 1998, Congress amended 18 USC Sec. 2422 applicable to enticement of a minor by doubling the mandatory minimum from 5 to 10 years.  Public Law 105-314, Sec. 102.  Congress directed the Sentencing Commission to promulgate amendments to the Guidelines for Section 2422(b) offenses to increase penalties for offenses involving a pattern of activity involving the sexual abuse or exploitation of a minor.  *Id.,* Sec. 505.  Congress further directed the Commission to add an enhancement for use of a computer with intent to entice a child. *Id.,* Sec. 108. In the PROTECT Act of 2003, Pub.L. 108-21 Sec. 401(i)(1)(B), (C) Congress directly amended the guidelines by increasing the number of enhancements in the child pornography guidelines 2G2.1 and 2G2.2 for use of a computer, age of the victim, number of images, for distribution, material portraying sadistic or masochistic conduct, among others, and limited sentencing judges' ability to depart below the guideline ranges in child pornography cases.  See U.S. Sentencing Comm'n. The History of the Child Pornography Guidelines, 38-40 (Oct. 2009).[3]  Congress also increased the base offense level in 2G2.1(a) from 27 to 32 and broadened the enhancement for use of a computer to include an interactive computer service.[4]  Congress's action was driven by purely political concerns apart from careful study by the Commission. No research, study, or national experience was provided to justify the drastic increase in punishment.

Numerous courts have criticized the overly harsh sentences that result from the child pornography guideline 2G2.2 in that they are not the product of the Commission's

---

[3] https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-projects-and-surveys/sex-offenses/20091030_History_Child_Pornography_Guidelines.pdf.
[4] USSG Manual, App. C, amend. 664.

study and expertise.  *United States v. Abraham*, 944 F.Supp.2d 723, 728 (D. Neb. 2013)("… § 2G2.2 is the result of 2 decades worth of Congressional directives – at times actively opposed by the Commission – that have continually ratcheted up penalties and piled on enhancements."  "The real problem, as courts across the country have recognized, is that § 2G2.2 simply does not work." *Id.* citing *United States v. Grober,* 624 F.3d at 607-10; *see e.g., United States v. Henderson*, 649 F.3d 955, 960-63 (9th Cir. 2011); *United States v. Beiermann*, 599 S.Supp.2d 1087, 1104 (N.D. Iowa 2009); *United States v. Dorvee*, 616 F.3d 174, 184-86 (2nd Cir. 2010); *United States v. Diaz,* 720 F.Supp.2d 1039, 1041–42 (E.D.Wis.2010) (collecting cases).

Courts have likewise criticized USSG § 2G2.1, applicable in this case, because it suffers from similar deficiencies as § 2G2.2.   The Seventh Circuit Court of Appeals recognized that § 2G2.1, like § 2G2.2, was not crafted pursuant to the Commission's national wide empirical study of criminal sentencing, but instead was the result of Congressional involvement. *United States v. Huffstatler*, 571 F.3d 620, 623(7th Cir. 2009); *United States v. Muzio,* 966 F.3d 61, n. 4 (2nd Cir. 2020); *United States v. Price*, No. 09-CR-30107, 2012 WL 966971, at *12 (C.D. Ill. Mar. 21, 2012), aff'd, -- F.3d --, 2014 WL 6845407, at 11-12 (7th Cir. 2014) (affirming variance based on critique that  § 2G2.1 is "not the product of the Sentencing Commission's empirical study and independent policy judgment.... [a]nd call[s] for enhancements that apply in nearly every case, exerting virtually automatic upward pressure on sentences and failing to separate less dangerous offenders from those who are more dangerous.").

Given these inadequacies, some courts have categorically rejected § 2G2.1 and § 2G2.2 while others have found that the Guideline should be afforded less weight. *see, e.g. United States v. Jacob*, 631 F. Supp. 2d 1099, 1115 (N.D. Iowa 2009) ("USSG § 2G2.1 has some of the same flaws that I found warranted categorical rejection of  USSG § 2G2.2 [i.e.,... it does] not distinguish between least and worst offenders... and [gives] excessive weight to some otherwise proper factors....);  *Biermann*, 599 F.Supp.2d 1087 (N.D. Iowa 2009)(categorically rejecting § 2G2.2 on policy grounds and listing cases); *United States v. Zauner*, 688 F.3d 426, 431 (8th Cir. 2012)(J. Bright, concurring and noting child pornography guidelines eliminate any meaningful distinction between least and most culpable offenders and that courts are free to disagree with them); *United States v. Burns*, 834 F.3d 887 (8th Cir. 2016)(noting district court "may disregard the child pornography sentencing guidelines on policy grounds…"); *United States v. Cruikshank*., 667 F.Supp.2d 697, 702 (S.D.W.Va. 2009)(declining to impose guideline range sentence in light of the overly harsh guidelines).

Rather than sensibly differentiating between offenders based on their culpability and dangerousness, § 2G2.1 consists of enhancements that apply in nearly every case. Section 2G2.1 operates in a blanket manner failing to distinguish between more and less severe offenders let alone with regard for the nature of their offense or their personal characteristics.  USSG § 2G2.1, like the guideline § 2G2.2, is rife with enhancements for circumstances that almost invariably accompany a child exploitation or production conviction (e.g., 2-level increase based on age of the minor, 4-level increase for sadomasochistic material or depictions of violence, 2-level increase for use of a computer,

and 5-levels for number of images), resulting in 13 additional levels.  These enhancements applied are virtually omnipresent in all 2G2.1 and 2G2.2 cases, thereby inflating the sentencing range and eliding meaningful distinctions of culpability. *see* U.S. Sentencing Commission, *Federal Child Pornography Offenses* iii & n. 14 (2012).[5]

Because of the history of Congressional involvement, the base offense level in 2G2.1 is already a very high 32 (compared to 25 for the same offense as originally promulgated).[6] Several of the enhancements incorporated into 2G2.1 and applied in Mr. Draggs PSR – use of a computer or interactive computer service, age of minor, and material portraying sadomasochistic conduct – are sources of significant inflation in child pornography and exploitation cases.  For Mr. Draggs, they result in 8 additional levels. PSR ¶¶38, 40, 41, 47, 49, 55, 57.  Together, these enhancements mean that without adjustment for acceptance of responsibility, an ordinary first time § 2G2.1-2G2.2 offender could easily face an adjusted offense level 40 and a guideline range of 292-365 months "based solely on sentencing enhancements that are all but inherent to the crime of conviction." *Abraham*, 944 F.Supp.2d at 729 [internal citations omitted]; see also *United States v. Millette*, Docket No. 2:16-cr-00004-NT, 2020 WL 7502454, at *5 n.5 (D. Me. Dec. 21, 2020).  Mr. Draggs has also received additional enhancements, 2 levels for commission of a sex act, a 3-level multiple count adjustment for more than one minor involved and 5 levels for a "pattern of activity" involving prohibited sexual conduct.  PSR ¶ 39, 48, 56, 62, 66. Despite zero

---

[5] available at:http://www.ussc. gov/Legislative-and-Public-Affairs/ Congressional– Testimony–and–Reports/Sex–Offense–Topics/ 201212–Federal–Child–Pornography– Offenses/(hereinafter, "2012 Report").
[6] See USSG App. C, amends 537, 664.

criminal history, the end result is a severe life sentence that is inconsistent with the principles of individualized sentencing required in 18 U.S.C. § 3553(a) and 28 U.S.C. § 991(b)(1)(B). Accordingly, like the government, Defendant is requesting a sentence of 10 years' imprisonment.

The Sentencing Commission itself had recognized that the Guidelines are not working as intended in the context of offenders who commit non-production child pornography offenses and that § 2G2.2 warrants revision. Early on, the Commission in a comprehensive report on child pornography, concluded that "sentencing courts have also expressed comment on the perceived severity of the child pornography guidelines through increased below-guidelines variance and downward departure rates..." U.S. Sent'g Commission Report: The History of the Child Pornography Guidelines (October 2009) at 38, 54; *United States v. Morace*, 594 F.3d 340, 346 (4th Cir. 2010).

In *United States v. Dorvee*, the Second Circuit held that a district court's within-Guidelines sentence for possession of child pornography was substantially unreasonable,, identifying "serious flaws in USSG § 2G2.2." 616 F.3d 174, 182 (2nd Cir. 2010). The Court took a critical view of the recurrence of the same enhancements and the unfairness that results from sentencing uniformity when the same enhancements are applied. ("Consequently, adherence to the Guidelines results in virtually no distinction between the sentences for defendants like Dorvee, and the sentences for the most dangerous offenders who, for example, distribute pornography for pecuniary gain and who fall in higher criminal history categories.") This panoply of enhancements applies so frequently that it

serves to conflate offenders rather than differentiate among them. *Id.* 616 F.3d 174, 184-87 (2nd Cir. 2010).

The court in *Dorvee* also noted that many of the changes directed by Congress were openly opposed by the Sentencing Commission:

> The Commission has often openly opposed these Congressionally directed changes. For instance, the Commission criticized the two-level computer enhancement (which is currently set forth at § 2G2.2(b)(6) and was adopted pursuant to statutory direction) on the ground that it fails to distinguish serious commercial distributors of online pornography from more run-of-the-mill users. See United States Sentencing Commission, Report to Congress: Sex Offenses Against Children Findings and Recommendations Regarding Federal Penalties, June 1996, at 25-30, available at http://www.ussc.gov/r_congress/SCAC.PDF (last visited [*29] April 15, 2010). n7 Speaking broadly, the Commission has also noted that "specific directives to the Commission to amend the guidelines make it difficult to gauge the effectiveness of any particular policy change, or to disentangle the influences of the Commission from those of Congress." See United States Sentencing Commission, Fifteen Years of Guidelines Sentencing: An Assessment of How Well the Federal Criminal Justice System is Achieving the Goals of Sentencing Reform, 2004, at 73, available at http://www.ussc.gov/15_year/chap2.pdf (last visited April 15, 2010).

*Id.* at 95-96.

This view was underscored by former U.S. Sentencing Commissioner and Federal District Court Judge William K. Sessions III.  In "*At the Crossroads of the Three Branches: The U.S. Sentencing Commission's Attempts to Achieve Sentencing Reform in the Midst of Inter-Branch Power Struggles,*" Judge Sessions took aim at the congressional measures that have undermined fundamental fairness in sentencing defendants. According to Judge Sessions,

> "The PROTECT Act was one of several specific directives from Congress that, along with a growing number of statutes requiring mandatory minimum prison sentences, were designed to increase punishment, restrain judges' sentencing discretion, and afford prosecutors more power over sentencing. As a

result, the sentencing guidelines have become increasingly more severe." *Id* at 3.

### a. The Sentencing Commission's 2009 Report

The Commission's research shows that in Mr. Draggs's case, a life sentence is not warranted. In its 2009 report to Congress, the Sentencing Commission collected data on sentencing trends, offense conduct, offender characteristics, and victim characteristics in federal cases in which offenders were sentenced under USSG § 2G2.1. See United States Sent'g Comm'n, Federal Child Pornography Offenses 247 (Dec. 2012) (hereinafter "Comm'n Report"). The Commission found that average sentences in these cases were lower than that which Mr. Draggs is facing and that the offenders' conduct and backgrounds were more serious. See Comm'n Report at 253, 260, 264-65.

According to the Commission, victims in production cases were mostly female and prepubescent. Comm'n Report at 269; *see also id.* at 265-66 (nearly seventy percent of victims were under age 12).[7] More than two-thirds of offenders also kept collections of other child pornography, shared their self-produced images, or otherwise participated in child pornography communities. See Comm'n Report at 264-65. Although most production offenders had limited criminal history, "the vast majority" (79.5%) of those with criminal history had "histories of sexual 'contact' offenses." *Id.* at 269; *see also id.* at 259-60.

In contrast, the victims in this case were not prepubescent but rather fourteen and fifteen years old. PSR, at 16-17. Mr. Draggs is not a pedophile.  A pedophile is a person

---

[7] Although the Commission's data break down the victims under twelve into three age groups, they do not differentiate victims between the ages of twelve and seventeen. *See* Comm'n Report at 265-66. It is therefore not possible to tell how many victims were, like C.T., RC, and SC, fourteen and fifteen years old, respectively.

who is predominantly attracted to pre-pubescent males or females.  His relationship with adolescents – but pubescent – females confirms that he is not sexually attracted to children that have not begun to show outward signs of sexual development.  That is an essential distinction.  Mr. Draggs did not keep any other child pornography, he never distributed any images of the victims, nor was there any evidence that he participated in child pornography communities. And he has no prior record of sexual contact offenses. Nonetheless, the Guidelines call for a life sentence, higher than the average sentence noted in the Commission's report, see Comm'n Report at 268 (noting 2010 average of 269.1 months), citing - among other things - a factor that the Commission reported was common but does not apply to Mr. Draggs: that the defendant was trusted with the care and custody of the victims. see Comm'n Report at 269.  This average, of course, is skewed by the high sentences imposed in egregious cases. *See, e.g., United States v. Cobler*, 748 F.3d 570, 582 (4th Cir. 2014) (citing cases involving decades-long sentences for, *e.g.*, rape of a developmentally disabled child, repeated abuse of a seven-year old, and production involving seven pre-pubescent children); *United States v. McCaffery*, 437 F.3d 684, 686-87 (7th Cir. 2006)(defendant priest who confessed to molesting hundreds of children over the course of his life received 240-month sentence); *United States v. Beenan*, 305 Fed. Appx. 307, 308-09 (8th Cir. 2008)(defendant who sexually abused a nephew repeatedly during his early teen and pre-teen years was sentenced to 240 months).

The 2010 average sentence reported by the Commission represented a near doubling since 2004, the first year after adoption of the PROTECT Act (when the average was 153.4 months), and a quadrupling since 1992, when the average sentence was 63.5

months. See Comm'n Report at 268. Moreover, the Commission reported that the average age of the offenders being sentenced under § 2G2.1 was 41 – almost 17 years older than Mr. Draggs.  Notably, the twenty-two year average sentence imposed in those cases is far lower than the life sentence recommended by the Guidelines here.

### b. The Sentencing Commission's 2021 Report

In June of 2021, the Sentencing Commission issued a report entitled "*Federal Sentencing of Child Pornography Non-Production Report.*" ("2021 Report").[8] This Report updates and expands on the Commission's 2012 Report.[9]  The Commission in its 2012 Report explained that by FY 2010, four of the six enhancements in § 2G2.2(b) - together accounting for 13 offense levels - applied to the typical non-production child pornography offender and thus failed to meaningfully distinguish between more culpable and less culpable offenders.[10]  The Commissioned warned that these enhancements are "outdated and disproportionate."[11]  They derived from an earlier technological era "when offenders typically received and distributed child pornography through the postal system and therefore, are out of date in current times.[12]  The Commission found that technological changes such as the widespread use of peer-to-peer file-sharing networks, have changed the typical offender's profile.  In particular, the anonymous and ready access offered by

---

[8] The full 2021 Report can be found at:
https://www.ussc.gov/research/research-reports/federal-sentencing-child-pornography-non-production-offenses.
[9] 2021 Report at 1. The full 2012 Report can be found at:
https://www.ussc.gov/research/congressional-reports/2012-report-congress-federal-child-pornography-offenses
[10] *Id.,* at 18-19.
[11] *Id.,* at xxi, 321, 331.
[12] 2012 Report at iii, 313.

new technologies means that the typical offender's collection has not only grown in volume but is also likely to include more of the worse kinds of material, including graphic sexual abuse of prepubescent children. Now, even "entry-level offenders" can easily acquire and distribute large quantities of child pornography.[13]  and  recommended that Congress take several steps to remedy the problems with the child pornography statutes and guidelines.[14]  The 2012 Report reflects that by 2011, 62.5 percent of child pornography defendants were sentenced below the guideline range, even when no substantial assistance motion was filed by the government.[15]  The Commission recommended revising §2G2.2 to eliminate the disproportionate emphasis on outdated measures of culpability, including those for use of computer and type and volume of images possessed, and that Congress align the statutory penalty schemes for receipt offense and possession offenses.[16] However, Congress has not acted on the Commission's requests and recommendations:

> To date, Congress has not implemented the Commission's statutory or guideline recommendations. Therefore, §2G2.2 remains largely unchanged, with the guideline enhancements for non-production child pornography offenders at issue in the 2012 Child Pornography Report still in effect. As a result, judges have continued to sentence most non-production child pornography offenders below their guideline ranges, most often by imposing variances pursuant to 18 U.S.C. § 3553(a).[17]

In its 2021 Report, the Commission "analyzed 1,340 cases in which [nonproduction] offenders were sentenced under § 2G2.2 in fiscal year 2019 for which courts submitted

---

[13] Id. at 6, 149, 154, 312-13.
[14] 2021 Report at 2.
[15] 2012 Report at ii.
[16] *Id.*
[17] *Id.* at 3.

sufficient sentencing documentation."[18]   The 2021 Report also includes data on offenders

sentenced from 2005 to 2019.[19] The Commission observed that:

> Technological changes have increased the volume and accessibility of child pornography. As a result of such changes, the typical offender's collection in fiscal year 2019 was voluminous and contained a wide variety of graphic sexual images, including images of very young victims.[20]

The Commission found that the § 2G2.2 enhancements have not kept pace with

technological advancement and "[f]our of the six enhancements—accounting for a combined

13 offense levels—cover conduct that has become so ubiquitous that they now apply in the

vast majority of cases sentenced under § 2G2.2."[21]   The 2021 report also found that:

> In fiscal year 2019, these enhancements each continued to apply in the vast majority of non-production child pornography cases. Notably, over 95 percent of non-production child pornography offenders received enhancements for use of a computer and for the age of the victim (images depicting victims under the age of 12). The enhancements for images depicting sadistic or masochistic conduct or abuse of an infant or toddler (84.0% of cases) or having 600 or more images (77.2% of cases) were also applied in most cases.[22]

The defense asks the Court to vary below the guideline range to a sentence of 10 years

due to the application of USSG §§ 2G2.1(b)(2), (b)(4), and (b)(6) to Mr. Draggs.   Like 2G2.2,

these enhancements recur in nearly every case, thereby failing to distinguish as to more

culpable, more dangerous offenders. They lead to a sentence greater than necessary,

contrary to 3553(a).   As the D.C. Circuit said of a similar request for a downward departure

from the crack cocaine Guidelines, "[I]t remains of great importance that, in its

---

[18] "This data set includes 625 distribution offenders, 146 receipt offenders, and 569 possession offenders." *Id.* at 29

[19] *Id.* at 8.

[20] *Id.* at 30.

[21] *Id.* at 4.

[22] *Id.*

recommendations, the Commission candidly and forthrightly exposed the weaknesses and failings of its Guideline…" *United States v. Pickett*, 475 F.3d 1347, 1355 (D.C. Cir. 2007). Indeed, in *Pickett*, the Court reversed the district court for failing to consider how the Commission's own thinking supported a departure request.  *Id.* at 1356.

### 1.  Two-Level enhancement for age of children

The Commission found that in FY 2019, the type of images is almost universal in child pornography cases - 95% of all non-production child pornography defendants received the § 2G2.2(b)(2) enhancement for images of the victims being under 12 years of age.[23]  The Commission further noted that:

> A majority of the non-production child pornography offenders had images or videos of very young victims. In fiscal year 2019 ... nearly every offender (99.4%) had images or videos depicting victims who were prepubescent or under the age of 13. In other words, *less than one percent* of non-production offenders had images or videos consisting solely of victims age 13 years or older.[24]

The Commission found that "technological changes have resulted in . . . ready accessibility of child pornography," including graphic sexual images of very young victims, which "previously was not widely circulated."[25]

### 2.  Four-Level Enhancement for Sadistic/Masochistic Images

The Commission found that in FY 2019, 84% of all non-production child pornography defendants received the USSG §2G2.2(b)(4) enhancements for images depicting sadistic or

---

[23] *Id.* at 4.
[24] *Id.* at 31 (emphasis added).
[25] 2012 Report at 6.

masochistic conduct or abuse of an infant or toddler.[26]   The four level increase applies whether the defendant has a few such images or thousands.

### 3. Two Level Enhancement for Use of a Computer

Mr. Draggs was also given the common two-level enhancement under §2G2.1(b) for use of a computer or an interactive computer service. The use of a computer is inherent in the offense.  Computers arguably provide the most common means of communication.  Use of a computer for any purpose is, in this day and age, the rule rather than the exception.

As one federal District Judge testified before the Commission: "As widespread as computer use is now, enhancing for use of a computer is a little like penalizing speeding but then adding an extra penalty if a car is involved."[27] The enhancement for use of a computer (§2G2.2(b) should be rejected outright.

In 1996, Congress specifically directed the Commission to include a two-level enhancement in 2G2.1 if a computer was used. Sorting offender culpability by computer use may have had a rational basis twenty-six years ago when very few Americans had access to the Internet. It no longer does. Today, 93% of American adults use the internet.  To rely on a factor that is common and unexceptional as the basis for a two level enhancement means

---

[26] 2021 Report at 19.

[27] Federal Sentencing Practices and the Operation of the Federal Sentencing Guidelines: Reg'l Hearing Before the U.S. Sent'g Comm'n, at 5 (Nov. 2009) (statement of Robin J. Cauthron, Judge, W.D. Okla.), available at http://www.ussc.gov/Legislative_and_Public_Affairs/Public_Hearings_and_Meetings/20091119–20/Agenda.html.

the majority of cases will trigger the enhancement, which also means the factor isn't an enhancement but is rather a core part of the offense.

USSG §2G2.1 specific offense characteristics are purportedly designed to "increase the offense level based on the presence of an aggravating factor" in order to help the Court distinguish more culpable offenders.[28] But the ubiquity of computer use among those sentenced under § 2G2.1 now "fails to distinguish adequately between more and less severe offenders."[29]

## II.    Relevant Sentencing Statistics

Relevant data from the Sentencing Commission reflects the percentage of within range sentences under 2G2.1 and downward variances/departures (excluding 5K1.1) for defendants like Mr. Draggs in Criminal History Category I, for Fiscal Years 2015 - 2020.[30]

---

[28] 2021 Report, at 19.

[29] *Id.*

[30] These statistics were obtained from the Sentencing Commission's Interactive Data Analyzer available at ussc.gov.

|  | **2015** | | |
| --- | --- | --- | --- |
|  | National | 8th Cir. | E.D. Mo. |
| Within Range | 39.5% | 33.3% | 0 |
| Downward Departure/Variance | 53.1% | 59.0% | 100% |
|  | **2016** | | |
| Within Range | 37.9% | 38.1% | 0 |
| Downward Departure/Variance | 52.6% | 59.6% | 100% |
|  | **2017** | | |
| Within Range | 34.1% | 37.8% | 0 |
| Downward Departure/Variance | 61.7% | 54.0% | 96% |
|  | **2018** | | |
| Within Range | 34.3% | 35.9% | 0 |
| Downward Departure/Variance | 59.4% | 61.6% | 100% |
|  | **2019** | | |
| Within Range | 31.1% | 39.0% | 0 |
| Downward Departure/Variance | 64.2% | 58.6% | 100% |
|  | **2020** | | |
| Within Range | 33.0% | 30.0% | 25.0% |
| Downward Departure/Variance | 60.8% | 65% | 75.0% |

A review of the statistics above shows that a Guideline sentence of life in Mr. Draggs' case is well outside the range of reasonable sentences.  From fiscal years 2015-2020, there were no cases sentenced under 2G2.1 in which a within-guideline sentence was imposed nationally.  Within the 8th Circuit, there were slight increases in the rate of guideline sentences imposed during the years 2016-2019.  In the Eastern District of Missouri, just 25% of  2G2.1 cases received a guideline sentence; this is below both the national average and the average for this Circuit.

### III.    THE 3553(A) FACTORS SUPPORT A DOWNWARD VARIANCE

In addition to the arguments outlined above, the defense moves the Court to vary below the guideline range based on Mr. Draggs's history and characteristics. The PSR and letters in support of Mr. Draggs detail various § 3553(a) factors for the Court's consideration that further support the joint request of 120 month sentence.

<b><u>CONCLUSION</u></b>

Jason Draggs is a twenty-three year old man who is before the court for his first felony conviction.   Based on the 18 U.S.C. § 3553(a) factors and the other factors discussed in this sentencing memorandum, we respectfully request that the Court vary downward from the Guideline sentence and impose a sentence of 10 years, consistent with the joint recommendation of the parties.

Respectfully submitted,

/s/ *Diane Dragan*
DIANE DRAGAN
Assistant Federal Public Defender

1010 Market Street, Suite 200
St. Louis, Missouri 63101
Telephone: (314) 241-1255
Fax: (314) 421-3177
E-mail: Diane_Dragan@fd.org

ATTORNEY FOR DEFENDANT

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 3, 2022, the foregoing was filed electronically with the Clerk of the Court and a copy was electronically emailed upon Jillian Anderson, Assistant United States Attorney.

*/s/ Diane Dragan*